## DICK v. REPUBLIC NAT. BANK & TRUST CO.

No. 12433.

Court of Civil Appeals of Texas. Dallas.

Sept. 24, 1938.

Rehearing Denied Oct. 22, 1938.

Albert B. Hall, of Dallas, for plaintiff in error.

Larry De Bogory and Eugene De Bogory, both of Dallas, for defendant in error.

BOND, Chief Justice.

Plaintiff in error, Harry Dick, instituted this suit against the defendant in error, Republic National Bank and Trust Company, to recover $1,355.96, being the aggregate amount of a number of checks drawn on various other banks in Texas, made payable to the United States Rubber Company, or the United States Rubber Products Company of New York, Inc., the two companies being one and same corporation. The checks were given in settlement of claims due by the makers thereof to the payee, endorsed by the collector, Nat F. Melman, and deposited to the collector's credit in the Republic National Bank and Trust Company. The money thus received through the usual banking channels was turned over to and misappropriated by Melman. The endorsements on the checks are claimed to be forgeries, and this suit is brought to recover against the Republic National Bank and Trust Company for the conversion of the checks. It is conceded that the Republic National Bank and Trust Company accepted the checks for collection and paid the money to Melman in the usual course of banking, without notice of any wrongful purpose on the part of the depositor, except as may be deduced from the fact the checks were made payable to the Rubber Companies, endorsed by the collector, and the money paid to him.

The cause was submitted to the court without a jury and judgment rendered in favor of the bank, resulting in this appeal.

The record shows that the plaintiff in error conducted what is termed a law list, or directory, in the City of New York, in which was listed bonded attorneys, who were agreeable to his plan of circulating their names among prospective clients and, by assurances of their fidelity, to turn over to him and his said attorneys, claims, notes, and accounts due and owing by defaulting debtors, usually merchants in precarious financial condition. Louis Kastner, an attorney in New York, and Nat F. Melman, an attorney in Dallas, were among the listed attorneys, and, as a result of Dick's arrangement, the United States Rubber Company, or United States Rubber Products Company, Inc. forwarded to Kastner and he, in turn, to Melman, past due claims

against such merchants located in various parts of Texas.

In forwarding the claims to Melman, Kastner instructed him to collect the claims "under the usual Commercial Law League practice", on specified rates of compensation, and "it was assumed", so Mr. Kastner testified "that he (Melman) would collect the claims in the usual way and remit the proceeds in accordance with the Commercial Law League practice"; otherwise, Melman was given no further instruction by Kastner as to how such claims should be collected or the manner checks received should be handled, or how the money should be transmitted to his clients; certainly, Melman had no expressed authority from the Rubber Company to endorse its name on such checks; and, had no implied authority, except as the general practice and custom, and his previous dealings with Kastner and the Rubber Companies, as the circumstances of the case may reveal. He was directed to the collection of the claims, leaving the method of collection and the manner of remittance to his discretion and under the usual practice of the Commercial Law League. Mr. Blackmar, a credit-manager of the Rubber Company, testified: "I may have told Mr. Melman at various times, regarding various accounts, that the debtor was in bad shape, or that the account was a long ways past due, and we would like for him to collect it just as fast as possible; in fact, those are the usual instructions we give to any attorney in collecting any account."

It was shown in the trial of this case that the general practice in Dallas, among collection agencies and attorneys and under the Commercial Law League practice, when claims are liquidated by debtor's check made payable to the creditor, and the check is turned over to the creditor's collection agency, or attorney, such agency or attorney usually endorses the payee's name on the check, deposits it to the collector's credit in a local bank and, on payment of the check by the bank's correspondent, remittance is made by the personal check of the collection agency, or attorney. There is also testimony that many of the claims handled by Melman for Kastner and the Rubber Companies, were against debtors in Texas who were in bad financial condition; therefore, it is believed that the attorney handling such claims would be derelict in his duty, to take the merchant's check, send it to New York for endorsement, and then await its return, thereby risking the chance of the check's dishonor. Obviously, time, convenience, and expediency are the basis of the established custom and practice, and, especially is this true in dealing with merchants in a distant state who are in precarious financial condition, and where financial failures occur and checks become worthless, before returns may be realized on the handling of the checks through the usual banking channels—going to and from New York through the various clearing houses of the nation.

The United States Rubber Company, or the United States Rubber Products Company, Inc., was a subscriber to the plaintiff in error's list of bonded attorneys; it sent to Kastner the claims involved here and, in turn, Kastner sent the claims to Melman, with the usual and customary instructions to collect and remit the proceeds in accordance with the prevailing practice of the Commercial Law League of America. Melman collected the claims by checks payable to the United States Rubber Company, on which he endorsed the payee's name, depositing them to his own credit in the defendant in error's bank, using the bank as a conduit, a gratuitous agency of Melman, through which the checks passed. Thus, we think, under the facts and circumstances here revealed, Melman was acting within the apparent scope of his employment; indeed, he had no expressed authority to receive checks as payment for the claims, but having done so in good faith, he had the implied authority to make formal endorsements on the checks in behalf of his client for the purpose of effecting the purpose for which he was employed.

It is believed that there was nothing illegal in Melman receiving and endorsing the checks involved in this suit, and any subsequent defalcation of the money received thereon would be a conversion or embezzlement of the fund by Melman alone; therefore, the Rubber Company, or its duly authorized agent, Melman, having received the money, which Melman was authorized to receive, the Bank cannot be held guilty of conversion of the checks, or the money. The endorsements of the checks were incidents, manifestly and reasonably necessary, to the performance of the collection which Melman was expressly authorized to perform; and, the Rubber Company being a resident of New York, a distant state, and Melman being instructed by its credit manager to "collect it (the claims)

just as fast as possible", under such circumstances and the prevailing practice and custom in Dallas and of the Commercial Law League of America, implied, if not express authority, was undoubtedly extended to Melman to exercise discretion in the manner of collection, and, so concluding, the judgment of the court below is affirmed.

Affirmed.